SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Co-Counsel for James Benthin*

JOSEPH S. GILBERT, ESQ.
Nevada State Bar No.: 9033
JOEY GILBERT LAW
405 Marsh Avenue
Reno, Nevada 89509
Tel: (775) 284-7700
Fax: (775) 284-3809
Joey@joeygilbertlaw.com
*Co-Counsel for James Benthin*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JAMES BENTHIN an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada; DOES I through XX, and ROE CORPORATIONS I through XX,<br><br>Defendants. | Case No.:<br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

COMES NOW, Plaintiff, JAMES BENTHIN, by and through his attorneys of record, SIGAL CHATTAH, ESQ., of CHATTAH LAW GROUP and JOSEPH S. GILBERT, ESQ., of JOEY GILBERT LAW, and hereby alleges and complain against WCSD as follows:

## JURISDICTION AND VENUE

1. This court has Federal subject matter jurisdiction under 42 U.S.C. § 1983, 42 U.S.C.

1

§ 12111 et. seq., § 12203, and 28 U.S.C. § 1331, 1343.

2.     Venue is proper under 28 U.S.C. § 1391 in the District of Nevada, Washoe County, because this claim arose therein.

3.     This Court has supplemental jurisdiction over Mr. Benthin's State law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy described by Federal claims.

4.     All of the acts or failures to act herein were duly performed by and attributable to all Defendants, each acting as agent, employee, or under the direction and/or control of the others. Said acts or failures to act were within the scope of said agency and/or employment and each of the Defendants and ratified the acts and omissions by the other Defendants. Whenever and wherever reference is made in this Complaint to any acts by Defendants, such allegations and references shall also be deemed to mean the acts of each of the Defendants acting individually, jointly or severally.

5.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES I through XX, and ROE CORPORATIONS I through XX, inclusive, are unknown to Mr. Benthin who therefore sues said Defendants by such fictitious names.  Mr. Benthin is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE or ROE CORPORATION is responsible in some manner for the events and happenings herein referred to and damages caused proximately thereby to Mr. Benthin  as herein alleged; that Mr. Benthin will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Defendants DOES I through XX and/or ROE CORPORATIONS I through XX, when same have been ascertained by Mr. Benthin together with appropriate charging allegations, and to join such Defendants in this action.

///

**PARTIES**

6.     Plaintiff, JAMES BENTHIN ("Mr. Benthin"), is currently and at all times relevant herein, residents of the County of Washoe, State of Nevada.  Mr. Benthin is, and at all times relevant hereto was, an employee of Washoe County School District.

7.     Defendant, Washoe County School District ("WCSD"), is a political subdivision of the state of Nevada, having and exercising full control, power, and oversight over the operations and activities at its schools, over its programs and its administrators, teachers, and other staff and personnel, whose purpose is to administer the state system of public education, is located in said County and State receiving Federal funding.

8.     Every act and omission alleged herein was done by WCSD and carried out under the color and pretense of State and Federal laws, statutes, ordinances, regulations, or customs.

9.     All of the acts or failures to act herein were duly performed by and attributable to all Defendants, each acting as agent, employee, or under the direction and/or control of the others. Said acts or failures to act were within the scope of said agency and/or employment and each of the Defendants ratified the acts and omissions by the other Defendants.  Whenever and wherever reference is made in this Complaint to any acts by Defendants, such allegations and references shall also be deemed to mean the acts of each of the Defendants acting individually, jointly or severally.

**PRELIMINARY STATEMENT**

10.     The Fourteenth Amendment to the United States Constitution affords Mr. Benthin the right to equal protection under the laws.

11.     WCSD violated Mr. Benthin's rights when they, under the color of state law, carried out customs and/or policies and/or practices and usage of deliberate indifference and tolerance for physical abuse and/or assault, knowingly failed to protect Mr. Benthin and prohibit

3

violent conduct.

12.     The Fourteenth Amendment to the United States Constitution also affords Mr. Benthin the right to procedural due process.

13.     WCSD deprived Mr. Benthin of that right when they, under color of state law, denied Mr. Benthin the subsequent procedural safeguards, and failed to protect Mr. Benthin.

14.     WCSD were negligent and acted under color of state law when they condoned, ratified, and carried out the prohibited conduct.

15.     Nevada statute mandates that WCSD carry out certain duties, owed to Mr. Benthin and other similarly situated staff and students to provide a safe environment for both students and staff.

16.     WCSD were negligent and acted under the color of state law when they breached and failed in the performance of their duties to Mr. Benthin when they failed to discipline and remove dangerous students and failed to prevent the violent assault and battery of Mr. Benthin.

17.     WCSD were negligent and acted with deliberate indifference, when they, under color of state law, breached and failed in the performance of their duties.

18.     WCSD's negligent actions, and their deliberate indifference to the DOE, shocks the conscience and demonstrates a discriminatory and dangerous environment found within the Washoe County School District.

## FACTUAL ALLEGATIONS

19.     At all times relevant to this Complaint, the acts and omissions giving rise to this action occurred in the County of Washoe, State of Nevada.

20.     At all pertinent times, Mr. Benthin was employed by WCSD as a paraprofessional and worked within the Special Education Department at Desert Skies Middle School ("Desert Skies").

21.    Shortly before the incident described below, a minor student, N.L., had transferred from Turning Point to Desert Skies.  Prior to being transferred to Turning Point, N.L. was enrolled at Cold Springs Middle School.

22.    Turning Point is a self-contained program within WCSD.  According to WCSD's website, Turning Point program helps individual special needs children who have demonstrated significant behavioral regression in the least restrictive environment (LRE) on a middle school or high school campus, even with supplemental aids, services, modifications, and individual behavior plans.

23.    Thus, WCSD had prior knowledge of N.L.'s dangerous propensities, as N.L. was clearly placed in Turning Point as a result of his violent, destructive and abusive behaviors toward staff, students and property.

24.    Mr. Benthin and the special education teacher, Mrs. Hood, received N.L.'s education file several days after his transfer.  The information in the file made it clear that N.L. was a danger to both students and staff.  Both Mrs. Hood and Mr. Benthin informed Special Education Administrators, Bryan Moll and Colleen Saiz, of the same.  The administrators at Desert Skies were on notice of N.L.'s propensity for violence.

25.    Mr. Benthin and Ms. Hood requested a meeting with N.L. to review the Social Intervention Program policies and procedures with N.L.  The WCSD administrator would not provide the resources to make this meeting possible and simply responded, "well you're stuck with him."

26.    On or about October 17, 2023, Mr. Benthin was in a Special Education classroom working as the Teacher's Assistant.  There were approximately three students and Mrs. Hood present in the room with Mr. Benthin.  Mr. Benthin was primarily focused on working with one student, Albert.

27.     N.L. entered the room and immediately began taunting Albert by singing the Papa Roach song, "Last Resort" and telling Albert to commit suicide.  Both Mr. Benthin and Ms. Hood attempted to correct N.L.'s behavior.  N.L. then began screaming profanity, homophobic slurs and threatened Albert with physical harm in response.

28.     This was not the first time N.L. had exhibited this threatening behavior towards Albert in front of Mr. Benthin.

29.     Mr. Benthin attempted to de-escalate N.L. several times.  When Mr. Benthin was unsuccessful, he told Albert to go into a small storage room adjacent to the classroom and close the door, in an attempt to protect Albert from N.L.

30.     N.L. grabbed Albert's backpack and began parading around the room.

31.     N.L. then proceeded to go to the storage room door and taunt, mock and belittle Albert through the door.  N.L. was provoking Albert to come out of the storage room so that the two could fight.

32.     Mr. Benthin stood at the door and N.L. attempted to physically push Mr. Benthin away from the door to get to Albert.  When Mr. Benthin refused to move, N.L. grabbed Mr. Benthin around the throat from behind.  Mr. Benthin struggled to get out of the chokehold and both N.L. and Mr. Benthin wound up on the floor.

33.     N.L. was still trying to kick and punch Mr. Benthin while they were on the floor.  Mr. Benthin was ultimately able to restrain N.L.

34.     By this point in N.L.'s attack, Ms. Hood called the office.  A WCSD Dean, "Ms. Phillips," reported to where N.L. continued to attack Mr. Benthin.  Ms. Phillips did nothing to assist Benthin in stopping the attack.

35.     Instead, Ms. Phillips instructed Mr. Benthin to release N.L.

36.     Mr. Benthin complied with Ms. Phillips' directive and released N.L.  Upon release,

6

N.L. promptly swung his backpack and hit Mr. Benthin in the face knocking Mr. Benthin unconscious.  This attack resulted in a broken nose and a severe concussion.

37.     N.L. then ran out of the classroom, followed by Ms. Phillips.

38.     Approximately ten to fifteen minutes later, N.L. appeared at the outside window to the room Mr. Benthin was located.  N.L. had a rock as big as a grapefruit in his hand and proceeded to smash the window.

39.     Once the window was sufficiently broken, N.L. climbed into the classroom, yelling profanity and racial slurs.  N.L. picked up a chair and threw it at Mr. Benthin.  The chair hit Mr. Benthin's desk, shattering Mr. Benthin's computer causing glass shards and shrapnel from the computer to fly into Mr. Benthin's face and body.

40.     N.L. then ran off campus.  Based upon N.L.'s behavior, Desert Skies issued a "Code Yellow" warning which locks down the school.

41.     N.L. was ultimately apprehended by at least four school police officers.

42.     The Principal of Desert Skies, Ms. Quintana, asked Mr. Benthin to go to the office shortly after the attack to fill out a police report.

43.     When Mr. Benthin approached the office, he noticed that N.L. was pacing back and forth in the counseling section of the office.  N.L. was not restrained in any manner.

44.     Mr. Benthin filled out the police report and tended to his injuries.  The entire time, Mr. Benthin was concerned as he believed that N.L. would attempt to attack him again.

45.     The school police officers spoke with Benthin about the incident.

46.     N.L. was ultimately taken to Jan Evans Detention Center, but was released so quickly he was back playing near the school campus before the end of the school day.

47.     Mr. Benthin finished out the day teaching his classes.  Ms. Quintana did not send him to the hospital or offer him any leave to tend to his injuries.

48.     Ms. Quintana did, however, text, email and called Mr. Benthin several times in an attempt to get Mr. Benthin to meet and review the video of the assault.

49.     October 18, 2023, the day after the incident, Mr. Benthin was in so much physical pain he used his sick leave so that he could seek medical attention.   Originally, he went to Concentra, but due to the severity of his injuries, they sent him to the Renown Emergency Room.

50.     As a result of his concussion, Mr. Benthin could not remember where Renown was located.  Once he was able to check into Renown, it was confirmed that he suffered a broken nose, severe concussion, as well as additional injuries from the attack.

51.     On October 20, 2023, when Benthin reported back to school, Ms. Quintana wanted to have a meeting with twelve other WCSD employees to watch a video of the assault and "go over things that we could have done better."  Mr. Benthin asked for union representation to attend said meeting and Ms. Quintana refused.  At that point, Mr. Benthin felt uncomfortable attending the meeting.  Ms. Quintana showed the video of the assault to other WCSD employees.

52.     Ms. Quintana asked Mr. Benthin to recount the attack.  Mr. Benthin informed her that N.L. had hit him in the face with the backpack and it had something very hard in it.  Ms. Quintana responded that N.L. did not hit Mr. Benthin in the face with the backpack, but "cold clocked" you twice in the face.

53.     Mr. Benthin felt extremely uncomfortable with Ms. Quintana's treatment of the attack.  Upon return to his classroom he began making copies of certain documentation such as emails, police reports, etc., which he put in a large yellow envelope and in a gray zipper folder.

54.     Ms. Quintana informed Mr. Benthin that she was planning on returning N.L. to Mr. Benthin's classroom.

55.     On October 23, 2023, Mr. Benthin went to the sheriff's department to file assault and battery charges against N.L. and they refused, stating that they could not file the charge, as it

8

wasn't a felony and the school police is the only authority with jurisdiction.

56.     Mr. Benthin then filed a police report with Officer Mendez of the school police, and they have refused to contact him or provide him with any information.

57.     Mr. Benthin was experiencing the effects of his injuries and used several sick days to rest and recuperate.  Ms. Quintana did not provide any employment options or short-term leave for medical or mental health concerns.

58.     In a letter dated October 31, 2023, Ms. Quintana notified Benthin that he had potentially "abandoned" his position, that he was "absent without authorization" from his position, that he had not reported to his work assignment or called to notify and explain his absence since October 24, 2023.

59.     The letter further stated that a wellness check was conducted by the Washoe County Sheriff's Office on October 26, 2023, but that Mr. Benthin did not respond.  This is false, Mr. Benthin did answer the door, spoke to two officers.  Mr. Benthin's family was present at this time.

60.     Mr. Benthin suffered, and continues to suffer headaches, sinus issues, mental confusion, loss of time and understanding, as a result of his concussion from the violent attack.

61.     Rather than provide Mr. Benthin with assistance and short-term leave, WCSD terminated Benthin from his position, claiming that he "abandoned his position."

62.     Mr. Benthin responded to the principal's letter, notifying her that he was fearful for his life, as it was reported to him that the N.L. had returned to Desert Skies school, and was back in the Special Education classroom.

63.     Mr. Benthin notified Ms. Quintana that he wished to retain his position, requested a reasonable accommodation, and that N.L. be removed not only for his safety, but for the safety of other staff and students.

64.     Mr. Benthin received no response from Ms. Quintana or any employee from

9

WCSD.

65.     As a result of these collective acts, Mr. Benthin manifested the following somatic and psychosomatic symptoms:

• Concussion, headaches.

• Difficulty eating, loss of appetite.

• Increased anxiety and depression, fear when leaving his house, paranoia.

• Post-traumatic stress disorder.

• Diminished concentration and memory.

• Loss of time and inability to focus.

• Loss of Sleep, Sleep Apnea.

• Misalignment of sinuses which required corrective surgery, continued difficulty with breathing.

• Hearing loss in left ear.

• Equilibrium and balance issues.

66.     At all pertinent times, N.L. was under the care, supervision, custody, and direction of WCSD.

67.     At all pertinent times, the teachers, staff, and administrators herein were under the control, supervision, direction, and authority of WCSD.

68.     At all pertinent times, WCSD was and is a political subdivision of the State of Nevada, existing and operating by virtue of the laws of the County of Washoe, State of Nevada, having and exercising full control, power, and operating oversight of the educational programs and activities at its schools, within its district, while a recipient of Federal funding.

69.     At all pertinent times, WCSD acted by and through its teachers, staff, and administrators, who carried out final decisions and policies regarding the transfer of the dangerous

student, and the care, supervision, custody, and protection of Mr. Benthin and other staff and students.

70.     WCSD carried out policies and/or practices and/or customs and usage of not adequately vetting dangerous students, not appropriately removing dangerous students from schools and placing them in other care facilities, of allowing misconduct and dangerous behavior, and deliberate indifference to the plight of Mr. Benthin and other staff and students when they, under color of state law, created a dangerous, hostile, and offensive environment, left Mr. Benthin to be harmed, and condoned, ratified, and carried out acts and expressions so objectively offensive that they shock the conscience.

71.     Whereas WCSD's acts and omissions and deliberate indifference violated Mr. Benthin's constitutional and statutory rights.

72.     WCSD knew of their duties, by and through each of its published documents:

Board Policy, 9200: Harassment and Discrimination Prohibited.

Board Policy, 5700: Safe and Respectful Learning Environment.

Admin. Regulation, 5701: Student Bullying, Discrimination, and/or Harassment.

State Dept. of Education Nevada Model Code of Ethics for Educators.

Student Behavior: Administrative Procedures Manual.

Section 504 Implementation Manual

73.     Mr. Benthin relied on the published documents and made reasonable inferences from the same that WCSD would exercise due and reasonable care in the performance of their duties.

74.     Where WCSD acts and omissions were expressed and carried out through persons with final authority and decision-making capacity through practices so pervasive and widespread as to constitute a custom or a policy with the force of law, and WCSD practices resulted in each

violation.

75.    Mr. Benthin was subjected to violent assault and battery, intentional infliction of emotional distress, mental and emotional anguish, fear, embarrassment, and loss of employment.

76.    At all pertinent times, WCSD had knowledge of the risk of harm to Mr. Benthin and of the dangerous, hostile, and offensive environment, had knowledge that Mr. Benthin would in fact be harmed, and ratified the violent behavior exhibited by N.L.

### FIRST CAUSE OF ACTION

### (Violation of 14th Amend. – Equal Protection)

77.    Mr. Benthin repeats and re-alleges all prior paragraphs of the Complaint and incorporate them by reference as though fully set forth herein.

78.    Whereas the Equal Protection Clause of the Fourteenth Amendment affords Mr. Benthin the right to equal protection of the laws, WCSD denied Mr. Benthin the right when they, under the color of state law, carried out customs and/or policies and/or practices and deliberate indifference, non-reporting, and usage of deliberate indifference and tolerance for physical abuse and/or assault, knowingly failed to protect Mr. Benthin from N.L. and prohibit violent conduct.

79.    WCSD, acting under the color of the law, failed to protect Mr. Benthin, and rather, condoned, tolerated and carried out the prohibited conduct.

80.    WCSD's actions were unlawful, unnecessary and unjustified.

81.    At all times relevant herein, WCSD exercised substantial control over N.L., and certain WCSD administrators and/or employees.

82.    The WCSD administrators and/or employees acted in a professional capacity when they condoned, ratified and carried out the prohibited conduct against Mr. Benthin, and retaliated by ultimately terminating Mr. Benthin.

83.    WCSD's offending customs and/or policies and/or practices arise from an express

policy made through the decisions and/or omissions of WCSD's personnel with final policy-making authority.

84.   WCSD condoned, ratified and carried out the prohibited conduct and excluded and denied Mr. Benthin from participation and benefits from WCSD's educational programs and activities.

85.   WCSD's acts and expressions were so objectionably offensive that they created an environment where Mr. Benthin was in danger and in fact was harmed, in violation of Mr. Benthin's Constitutional, Federal and States' rights, where such danger was foreseeable.

86.   Mr. Benthin is entitled to recover from WCSD for all damages directly and/or proximately resulting from the violation of his Constitutional right to equal protection under the law.

**SECOND CAUSE OF ACTION**

**(Violation of 14th Amend. – Procedural Due Process)**

87.   Mr. Benthin repeats and re-alleges all prior paragraphs of the Complaint and incorporate them by reference as though fully set forth herein.

88.   The Due Process Clause of the Fourteenth Amendment of the United States Constitution affords Mr. Benthin the right to be free from state-imposed violations of bodily integrity.

89.   The Due Process Clause of the Fourteenth Amendment affords Mr. Benthin the right to due process.

90.   WCSD did deprive Mr. Benthin of his rights when they, under color of state law, did create a dangerous, hostile, and offensive situation, and acted with deliberate indifference to the known or obvious danger in having N.L. at the school, and specifically, where WCSD had knowledge and notice that the student was dangerous, where WCSD knew had knowledge and

notice that the student did not belong at the school, where WCSD transferred the student to the school regardless, and where the student did mentally, verbally, and physically abuse other minor students, and where the student, when trying to physically attack another student, did physically attack Mr. Benthin, amounting to dangerous assault and battery of a school employee with intent to harm, and where WCSD knew of the danger to Mr. Benthin and other similarly situated teachers and students, where WCSD created the danger and left Mr. Benthin to be harmed.

91.     WCSD had knowledge of and notice to the unique danger and risk of harm present to Mr. Benthin, of this kind and context, of his being a vulnerable target in a class with vulnerable students, and where WCSD's failure to act despite such actual knowledge and notice demonstrates deliberate indifference.

92.     WCSD deprived Mr. Benthin of his rights when they, under color of state law, terminated Mr. Benthin from his position without adequate due process.

93.     WCSD had final authority and decision-making capacity to identify, halt, and address the dangerous situation, to not transfer the student to the school, to initiate corrective and preventative measures, to mitigate the harm and lessen the state-created danger, and where WCSD's failure to do so despite its actual knowledge and notice demonstrates deliberate indifference.

94.     WCSD condoned, ratified, and carried out the prohibited conduct, created the dangerous environment and deprived Mr. Benthin of his rights.

95.     WCSD's acts and omissions were the direct and proximate cause of harm to Mr. Benthin, where the danger was foreseeable.

96.     As a direct and proximate result of WCSD's acts and omissions, Mr. Benthin did in fact suffer damages in an amount in excess of $75,000.

97.     WCSD affirmatively placed Mr. Benthin in danger, where WCSD's conduct

14

constitutes oppression and malice, Mr. Benthin is entitled to punitive damages in an amount triple compensatory, incidental, and consequential damages.

98.     Pursuant to 42 U.S.C. § 1988, Mr. Benthin is entitled to recover against WCSD for all reasonable attorneys' and expert fees, expended in prosecuting this action.

## THIRD CAUSE OF ACTION

### (42 USC §1983 – Monell Liability)

99.     Mr. Benthin repeats and re-alleges all prior paragraphs of the Complaint and incorporates them by reference as though fully set forth herein.

100.     Municipal liability can attach under *Monell v. Department of Social Services, 436 U.S. 658 (1978),* for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Case 1:20-cv-00135-TSK 18 Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).*

101.     Municipal liability can attach under *Monell*, if "the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." *Doe v. Claiborne County, Tenn.,* 103 F.3d 495, 507 (6th Cir. 1996).

102.     If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under Monell. *See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).*

103.     At all times relevant herein, the Superintendent of WCSD, and/or its subordinates, had a custom, pattern, practice, and/or procedure of transferring dangerous students to different schools without informing the administration, teachers and/or staff at said school.

104.     When these dangerous students would inevitably commit violent acts against unoffending students, teachers, and/or staff, the Superintendent would ratify these acts by either failing to discipline the students pursuant to the Student Behavior – Administrative Procedures

15

Manual, the Superintendent would assist in covering up these violent acts by either allowing the student to remain in the same school with the students, teachers and/or staff that were harmed or transferring the student to yet another school within WCSD.

105.    As evidenced by the above-stated custom, pattern, practice and/or procedure, WCSD and/or the Superintendent knows of this protocol and places the placement of the dangerous students above the safety of other students, teachers and/or staff.

106.    WCSD and the Superintendent had the opportunity and means to prevent the violent attack against Mr. Benthin which violated his constitutionally protected rights.

107.    WCSD had final authority and decision-making capacity to identify, halt, and address the dangerous situation, to not transfer the student to the school, to initiate corrective and preventative measures, to mitigate the harm and lessen the state-created danger, and where WCSD's failure to do so despite its actual knowledge and notice demonstrates deliberate indifference.

108.    As a direct and proximate result of the WCSD's unreasonable and unlawful actions, Mr. Benthin has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, severe emotional distress, mental anguish, embarrassment, humiliation.

109.    Because WCSD's actions were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law.

110.    Pursuant to *Monell v. Department of Social Services of New York, 436 U.S. 658 (1978)*, WCSD, through its policymaker, the Superintendent (and possibly other policymakers), is liable for the harms and losses sustained by Mr. Benthin.

111.    As a direct and proximate result of WCSD's acts and omissions, Mr. Benthin did

in fact suffer injuries and emotional and psychological harm, humiliation, degradation, damaged relationships, and general emotional distress, where Mr. Benthin claims both past and future damages, in an amount in excess of $75,000.

112.    Accordingly, WCSD and each of them are liable to Plaintiff for compensatory damages, punitive damages, and attorney's fees and costs.

## FOURTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

113.    Mr. Benthin repeats and re-alleges all prior paragraphs of the Complaint and incorporates them by reference as though fully set forth herein.

114.    By allowing a knowingly dangerous student to transfer to the school and attack innocent students and Mr. Benthin, WCSD engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

115.    By forcing Mr. Benthin to sign reports he did not ultimately agree with and also trying to force Mr. Benthin to watch training videos, insinuating that Mr. Benthin was somehow to blame for the attack and then ultimately terminate Mr. Benthin because he was disabled from his injuries from the attack WCSD engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

116.    WCSD acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from this outrageous conduct.

117.    WCSD's actions caused Mr. Benthin to suffer severe emotional distress as he was targeted for no reason, other than engaging in completely lawful conduct in the course and scope of his employment as a teaching assistant.

118.    As a result of the attack and subsequent termination, Mr. Benthin has suffered from,

*inter alia*, anxiety, insomnia, depression, and physical manifestations of such.

119.    As a direct and proximate result of the WCSD's unreasonable and unlawful actions, Mr. Benthin has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, severe emotional distress, mental anguish, embarrassment and humiliation.

120.    The actions of WCSD against the Mr. Benthin were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

### **FIFTH CAUSE OF ACTION**

### **(Assault)**

121.    Mr. Benthin repeats and re-alleges all prior paragraphs of this Complaint and incorporates them by reference as though fully set forth herein.

122.    WCSD, by and through N.L., intentionally acted to make Mr. Benthin reasonably apprehend that he was in imminent danger of being unlawfully touched in a harmful or offensive manner.

123.    Mr. Benthin did not consent to the dangerous student's conduct.

124.    As a direct and proximate result of the malicious and intentional conduct by N.L., whose acts were directed and ratified by WCSD collectively, Mr. Benthin suffered damages, the exact amount which will be proven at trial.

125.    The intentional conduct of WCSD was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Mr. Benthin's rights and safety that punitive damages are warranted.

126.    That it has become necessary for Mr. Benthin to retain the services of legal counsel

for which Mr. Benthin is entitled to recover such costs and expenses from WCSD.

## SIXTH CAUSE OF ACTION

### (Battery)

127.    Mr. Benthin repeats and re-alleges all prior paragraphs of this Complaint and incorporate them by reference as though fully set forth herein.

128.    WCSD, by and through N.L., unlawfully put Mr. Benthin in a chokehold.  When Mr. Benthin released N.L., as was demanded by Ms. Phillips, N.L. hit Mr. Benthin in the face with a backpack containing a large hard object and then threw a chair at him resulting in glass and shrapnel from Mr. Benthin's computer to fly in Mr. Benthin's face, with intent to harm Mr. Benthin.

129.    Mr. Benthin did not consent to the dangerous student's conduct.

130.    Mr. Benthin did suffer injuries as a result of WCSD's violent attack.

131.    As a direct and proximate result of the malicious and intentional conduct by N.L., whose acts were directed and ratified by WCSD collectively, Mr. Benthin suffered damages, the exact amount which will be proven at trial.

132.    The intentional conduct of WCSD was so despicable, oppressive, malicious, and engaged in with such conscious disregard for Mr. Benthin's rights and safety that punitive damages are warranted.

133.    That it has been necessary for Mr. Benthin to retain the services of legal counsel for which Mr. Benthin is entitled to recover such costs and expenses from WCSD.

## SEVENTH CAUSE OF ACTION

### (Negligence)

134.    Mr. Benthin repeats and re-alleges all prior paragraphs of this Complaint and incorporates them by reference as though fully set forth herein.

135.     WCSD owed several duties to Mr. Benthin, and other similarly situated students, including, but not limited to the following: (i) to act as stewards and guardians of the laws, values, and procedures for the District, (ii) to provide a safe and respectful learning environment for all staff and students; (iii) to identify and report acts of prohibited conduct; (iv) to prohibit and prevent the assault and battery of its staff and students; (v) to provide counseling and accommodations to Mr. Benthin when harmed; and (vi) to provide due and reasonable care.

136.     WCSD breached these duties when it transferred N.L. to Desert Skies, knowing of his dangerous propensities, and allowed him to violently attack Mr. Benthin.

137.     As a direct and proximate result of these breaches, Mr. Benthin has suffered damages in an exact amount to be proven at trial.

**WHEREFORE, Plaintiff prays for judgement against WCSD as follows:**

1.     Award Mr. Benthin damages arising out of his § 1983 Claims under the Fourteenth Amendment to the U.S. Constitution.

2.     For special damages, both past and future, in an amount in excess of $75,000.00 against the Defendant.

3.     For general damages, both past and future, in an amount in excess of $75,000.00 against the Defendant.

4.     For compensatory damages directly and proximately caused by the acts/omissions of WCSD.

5.     For punitive damages in the amount to be requested at trial.

///

///

///

///

20

6.      For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

7.      For such other and further relief as this court deems proper.

**DATED** this 23rd day of September, 2024.

**CHATTAH LAW GROUP**


_/s/ Sigal Chattah_
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Attorneys for Benthin


**JOEY GILBERT LAW**


_/s/ Joseph S. Gilbert_
JOSEPH S. GILBERT, ESQ.
Nevada State Bar No.: 9033
405 Marsh Avenue
Reno, Nevada 89501
Attorneys for Benthin
