UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES BENTHIN, an individual, | Case No. 3:24-cv-00428-ART-CSD |
| Plaintiff, | ORDER |
| v. | |
| WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada; DOES I through XX; and ROE CORPORATIONS I through XX, | |
| Defendants. | |

Plaintiff James Benthin brings this case against Defendant Washoe County School District ("WCSD" or "District"), alleging violations of state and federal law. Following a violent incident with a student in the Special Education classroom at Desert Skies Middle School, Benthin was terminated from his position with WCSD. Before the Court is Defendants' Motion to Dismiss Benthin's First Amended Complaint. (ECF No. 17.) As detailed below, the Court dismisses all causes of action with leave to amend.

## I.    BACKGROUND

The following allegations are adapted from Benthin's First Amended Complaint ("FAC"). Benthin was employed by WCSD as a paraprofessional and worked within the Special Education Department at Desert Skies Middle School ("Desert Skies"). (ECF No. 12 at ¶ 20.) Shortly before the incident at issue, a minor student, N.L., transferred to Desert Skies from Turning Point, a self-contained program within WCSD for children with special needs. Students are placed at Turning Point based on having demonstrated significant behavioral regression in the least restrictive environment on a middle or high school campus. (*Id.* at ¶ 21–22.) Benthin and the special education teacher at Desert Skies, Mrs. Hood, received N.L.'s education file after N.L.'s transfer, which they felt indicated that

1    N.L was a danger to students and staff. (*Id.* at ¶ 24.)

2        Benthin and Hood alerted Special Education Administrators, Bryan Moll

3    and Colleen Saiz, to their concerns regarding N.L. (*Id.*) Benthin and Hood also

4    requested a meeting to review the "Social Intervention" policies and procedures

5    with N.L., but this meeting never occurred. (*Id.* at ¶ 25.) According to Benthin,

6    the WCSD administrator would not provide the necessary resources for the

7    meeting and instead responded, "well you're stuck with him." (*Id.*)

8        On or around October 17, 2023, Benthin was working with a student, A.

9    Doe, in a special education classroom at Desert Skies. (*Id.* at ¶ 26.) N.L. entered

10    the classroom and taunted A. Doe by singing a Papa Roach song named "Last

11    Resort," and "telling A. Doe to commit suicide." (*Id.* at ¶ 27.) After Benthin and

12    Hood tried to correct N.L.'s behavior, N.L. screamed homophobic slurs, profanity,

13    and "threatened A. Doe with physical harm." (*Id.*) Benthin "attempted to de-

14    escalate N.L. several times," but those efforts were unsuccessful. (*Id.* at ¶ 29.)  To

15    protect A. Doe, Benthin told A. Doe to go into a "small storage room adjacent to

16    the classroom and close the door." (*Id.*) N.L. then took A. Doe's backpack and

17    paraded around the room, before N.L walked over to the storage room door and

18    taunted A. Doe through it. (*Id.* at ¶ 30–31.)

19        According to the FAC, after Benthin stood at the storage room door, N.L.

20    attempted to "physically push Mr. Benthin away from the door to get to A. Doe."

21    (*Id.* at ¶ 32.) N.L then "grabbed Mr. Benthin around the throat from behind,"

22    leading to a struggle resulting in both N.L. and Benthin being on the floor. (*Id.* at

23    ¶ 32.) N.L continued trying to "kick and punch" Benthin, at which point Benthin

24    restrained N.L. (*Id.* at ¶ 33.)

25        During the incident, Hood called the office, leading to the arrival of Ms.

26    Phillips, a WCSD Dean. (*Id.* at ¶ 34.) Phillips "instructed Mr. Benthin to release

27    N.L.," after which N.L. hit Benthin in the face with a backpack, resulting in a

28    "broken nose and severe concussion." (*Id.* at ¶ 35–36.) N.L then exited the

1    classroom, followed by Phillips. (*Id.* at ¶ 37.)

2        Ten to fifteen minutes later, N.L. broke and then climbed through the

3    outside window of the classroom. (*Id.* at ¶ 38–39.) N.L. picked up a chair and

4    threw it toward Benthin, hitting his desk and shattering his computer. (*Id.* at ¶

5    39.) N.L. then ran off campus but was ultimately apprehended by school police

6    officers. (*Id.* at ¶ 40–41.)

7        Soon after the incident, the Principal of Desert Skies, Ms. Quintana, asked

8    Benthin to go to the office to fill out a police report. (*Id.* at ¶ 42.)  When Benthin

9    reached the office, he saw an unrestrained N.L. pacing in the counseling portion

10    of the office. (*Id.* at ¶ 43.) Benthin then spoke with school police officers regarding

11    the incident, before returning to the classroom to finish the school day. (*Id.* at ¶

12    45, 47.) N.L. was taken to "Jan Evans Detention Center" but was shortly released

13    from the facility. (*Id.* at ¶ 46.)

14        On October 18, 2023, Benthin used sick leave to seek medical attention,

15    where it was confirmed that he had a broken nose and a severe concussion,

16    among other injuries. (*Id.* at ¶ 49–50.) On October 20, 2023, Benthin reported

17    back to school. (*Id.* at ¶ 51.) Quintana attempted to have a meeting with Benthin

18    and twelve other WCSD employees to watch a video of the incident and discuss

19    "'things that we could have done better." (*Id.*)  Benthin asked for union

20    representation at the meeting, which was denied, so he chose not to attend the

21    meeting. (*Id.*)

22        Quintana then informed Benthin that she planned on returning N.L. to

23    Benthin's classroom. (*Id.* at ¶ 54.) Benthin subsequently used several sick days.

24    (*Id.* at ¶ 57.) During that time, Benthin attempted to file charges against N.L. with

25    the sheriff's department, but he was told only school police had jurisdiction. (*Id.*

26    at ¶ 55.) He then filed a police report with the school police. (*Id.* at ¶ 56.)

27        In a letter dated October 31, 2023, Quintana informed Benthin that he had

28    "potentially 'abandoned' his position, that he was 'absent without authorization,'"

1   and that he had "not reported to his work assignment or called to notify and
2   explain his absence since October 24, 2023." (*Id.* at ¶ 58.) WCSD then terminated
3   Benthin from his position. (*Id.* at ¶ 61.) Benthin responded to Quintana's letter,
4   "notifying her that he was fearful for his life" because he was told that N.L. had
5   returned to the Special Education classroom at Desert Skies. (*Id.* at ¶ 62.)
6   Additionally, in his response, Benthin informed Quintana that he wanted to
7   retain his position, "requested a reasonable accommodation," and asked for N.L.
8   to be removed from the classroom for the safety of him and others. (*Id.* at ¶ 63.)
9   According to Benthin, he did not receive a response from Quintana or WCSD. (*Id.*
10  at ¶ 64.)

11      Benthin alleges seven causes of action: 1) violation of the Fourteenth
12  Amendment's Equal Protection Clause; 2) violation of the Fourteenth
13  Amendment's Due Process Clause; 3) *Monell*[1] liability under 42 U.S.C. § 1983; 4)
14  intentional infliction of emotional distress; 5) assault, 6) battery; and 7)
15  negligence.

16      **II.    DISCUSSION**

17      WCSD argues that each of Benthin's claims must be dismissed under Rule
18  12(b)(6) for failure to state a claim. The Court dismisses all claims with leave to
19  amend.

20      A court may dismiss a complaint for "failure to state a claim upon which
21  relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pleaded complaint must
22  contain "a short and plain statement of the claim showing that the pleader is
23  entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S.
24  544, 555 (2007). While Rule 8 does not require "detailed factual allegations," it
25  demands more than "labels and conclusions" or a "formulaic recitation of the
26  elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

27

28  _____

[1] *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

4

1  *Twombly*, 550 U.S. at 555).

2  To sufficiently allege a claim, "a complaint must contain sufficient factual
3  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
4  *Id.* (quoting *Twombly*, 550 U.S. at 570). In reviewing a motion to dismiss, the
5  court accepts the factual allegations in the complaint as true. *Id.* However, "bare
6  assertions" in a complaint amounting "to nothing more than a 'formulaic
7  recitation of the elements'" of a claim are not entitled to an assumption of truth.
8  *Id.* at 680–81 (quoting *Twombly*, 550 U.S. at 555). The court discounts these
9  allegations because "they do nothing more than state a legal conclusion—even if
10  that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret
11  Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a
12  motion to dismiss, the non-conclusory 'factual content,' and reasonable
13  inferences from that content, must be plausibly suggestive of a claim entitling the
14  plaintiff to relief." *Id.*

15  If the court grants a motion to dismiss for failure to state a claim, leave to
16  amend should be granted unless the deficiencies of the complaint cannot be
17  cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th
18  Cir. 1992). In accordance with Rule 15(a), the court should freely give leave to
19  amend "when justice so requires," and in the absence of a reason such as "undue
20  delay, bad faith or dilatory motive on the part of the movant, repeated failure to
21  cure deficiencies by amendments previously allowed, undue prejudice to the
22  opposing party by virtue of allowance of the amendment, futility of the
23  amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

24  **A. Incorporation by Reference**

25  The District first argues that surveillance videos that captured parts of the
26  incident can be incorporated by reference. (ECF No. 17 at 6, n. 3.) Pursuant to
27  that argument, WCSD refers to the videos at length in its motion to dismiss. The
28  District offers two justifications for this action. First, it contends that the videos

should be incorporated by reference because they depict part of the incident that serves as the basis of Benthin's complaint. (*Id.*) Second, the District argues that incorporation is appropriate because the videos are included as an exhibit in the District's police report regarding the incident, which Benthin references making in his FAC. (*Id.*) The Court finds both arguments unavailing.

A district court, generally, "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, a court may "consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* (citing *Branch,* 14 F.3d at 453–54). The "mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Here, while Benthin mentions the surveillance videos in his complaint, they are not central to his claims. (ECF No. 12 at ¶ 51.) Though the surveillance videos may support a defense to allegations in the complaint, they necessarily do not "form the basis of the complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018). The surveillance videos are also not of the type of document that is normally incorporated by reference. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998) (finding incorporation by reference appropriate when a plaintiff's claim about insurance coverage was based on the contents of a coverage plan), *as amended* (July 28, 1998). The Court therefore declines to incorporate the surveillance videos by reference, in this case.

**B. Judicial Notice**

The District next argues that the Court should take judicial notice of the surveillance videos "because the District has requested it" and has supplied the

Court with the "necessary documents, which are capable of accurate and ready determination." (ECF No. 17 at 6, n. 3.) The District also asks the Court to take judicial notice of the Washoe Education Support Professionals (WESP) Collective Bargaining Agreement ("CBA") because it is "a readily-verifiable public record and the content of the CBA is not subject to reasonable dispute." (*Id.*)

A court may only take judicial notice of "adjudicative facts that are 'not subject to reasonable dispute.'" *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (quoting FED. R. EVID. 201(b)). A fact is indisputable, and thus subject to judicial notice, only if it is "either 'generally known' under Rule 201(b)(1) or 'capable or accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned' under Rule 201(b)(2)." *Id.* at 909. While a court may take judicial notice of matters of public record, a court "cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999.

The District does not simply request that the Court take judicial notice of the fact that the surveillance videos exist. Instead, it requests that the Court take judicial notice of the contents of the videos to prove that Benthin initiated physical conduct with N.L. (ECF No. 17 at 6.) This fact, among others that the District allege the surveillance videos show, are disputed by Benthin and thus are far beyond the usual purposes of judicial notice. (ECF No. 12.)

The District similarly requests that the Court take judicial notice of the CBA. (ECF No. 17 at 6, n. 3.) Benthin does not reference the CBA or that he is a part of the CBA in his FAC. *See Coates v. Washoe Cnty. Sch. Dist.*, No. 3:20-CV-00182-LRH-CLB, 2020 WL 7186746, at *7 (D. Nev. Dec. 4, 2020). Additionally, the District provides no document or reference showing that Benthin is a signatory to the CBA. *See id.*

The Court therefore denies the District's request for judicial notice and will

1    not consider the surveillance videos or CBA² in ruling on the motion to dismiss.

2    **C. Federal Law Claims**

3        Benthin alleges three federal, and four state law causes of action against

4    the District. (ECF No. 12.) The Court first addresses Benthin's federal law claims.

5    As a preliminary matter, because Benthin "does not contest dismissal" of his

6    Equal Protection claim (ECF No. 27 at 14, n. 2), the Court grants WCSD's motion

7    as to Benthin's Equal Protection claim.

8        The District first advances a global defense, arguing that Benthin's FAC

9    must be dismissed because all claims contained within the FAC are barred by

10   Nevada's workers' compensation statutes. (ECF No. 17 at 8–10.) Benthin

11   contends that federal constitutional claims brought under 42 U.S.C. § 1983 are

12   not barred by the state's workers' compensation laws. (ECF No. 27 at 14.)

13       To the extent that a worker' compensation system precludes recovery for

14   other causes of action, it "does not preclude recovery for claims involving

15   'substantive rather than procedural constitutional rights.'" *Jensen v. City of*

16   *Oxnard*, 145 F.3d 1078, 1084 n.3 (9th Cir. 1998) (citing *Daniels v. Williams*, 474

17   U.S. 327, 338, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)) (separate opinion of

18   Stevens, J.) ("If the claim [concerns a] ... violation of one of the specific

19   constitutional claims of the Bill of Rights[ ], a plaintiff may invoke § 1983

20   regardless of the availability of the state remedy.")

21       The District initially appears to argue for dismissal of Benthin's entire FAC

22   based on Nevada's workers' compensation statutes (ECF No. 17 at 8), but later

23   only claims that Benthin's personal injury claims are barred by the exclusive

24   remedy provisions of Nevada's workers' compensation statutes. (*Id.* at 9). Because

25   the District does not present an argument for dismissal of Benthin's

26   constitutional claims, the Court will not address that line of reasoning. The Court

27

28   ² The District argues that dismissal of a complaint is appropriate when a plaintiff "fails to exhaust administrative remedies available by way of a collective bargaining agreement." (ECF No. 17 at 10).  Because the Court has declined to judicially notice the CBA pursuant to the District's motion to dismiss, the Court will not address this argument.

therefore finds that Benthin's federal law claims are not barred by Nevada's workers' compensation statutes.

### 1. Due Process

For his second claim, Benthin advances two distinct theories of § 1983 liability under the Due Process Clause:[3] state-created danger and termination without adequate due process. (ECF No. 12 at 87–98.) Because § 1983 claims brought against a municipal entity are recognized by courts as "*Monell* claims," the Court construes Benthin's allegations as asserting municipal liability under *Monell* and addresses each in turn. *See, e.g., Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

The Due Process clause normally does not "impose a duty on the state to protect individuals from third parties." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (citations omitted). A state may be constitutionally required to protect a plaintiff that it "affirmatively places . . . in danger by acting with deliberate indifference to a known or obvious danger." *Id.* (citations omitted).

To succeed on a state-created danger claim, a plaintiff must establish that a municipal actor's affirmative act created an "actual, particularized danger," and that the ultimate injury to plaintiff was foreseeable. *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018). The actors "must have also acted with 'deliberate indifference' to a 'known or obvious danger.'" *Id.* (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011)). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Patel,* 648 F.3d at 974.

In the FAC, Benthin generally alleges that WCSD deprived him of his right "to be free from state-imposed violations of bodily integrity" (ECF No. 12 at ¶ 88), by knowingly failing to protect Benthin and prohibit violent conduct,

---

[3] *See Sweaney v. Ada Cnty., Idaho,* 119 F.3d 1385, 1391 (9th Cir. 1997) ("Section 1983 . . . creates a cause of action for violation of the federal Constitution and laws.").

"demonstrat[ing] deliberate indifference" (*Id.* at ¶ 90–94.) Benthin does not allege facts that show that any municipal actor affirmatively acted to place him in actual, particularized danger. *See Sinclair v. City of Seattle,* 61 F.4th 674, 682 (9th Cir. 2023) ("A danger is 'particularized' if it is directed at a specific victim."). Instead, he claims that WCSD's general decision to transfer N.L. to Desert Skies placed Benthin in danger and "left Mr. Benthin to be harmed." (ECF No. 12 at ¶ 90.) While WCSD's decision to transfer N.L. was an affirmative act, it was a general administrative decision not directed at Benthin, and thus was not particularized.

Benthin similarly attempts to establish that WCSD's decision to transfer N.L. from Turning Point to Desert Skies constituted a municipal actor's deliberate indifference to a known and obvious danger. (*Id.* at ¶ 90–93.) However, Benthin's bare assertion that WCSD knew of N.L.'s "dangerous propensities" because N.L. was "clearly placed in Turning Point as a result of his violent, destructive, and abusive behaviors," does not establish disregard of a known or obvious consequence of WCSD's action. (*Id.* at ¶ 23.)

While Benthin's response to WCSD's motion to dismiss contains additional evidence regarding this claim (ECF No. 27 at 16–19), Benthin has not amended his complaint to include such information. The Court thus finds that Benthin's bare allegations do not establish a violation of the Due Process Clause based on a state-created danger.

Benthin also alleges that his termination violated procedural due process requirements. (ECF No. 12 at 92.) To state a claim for procedural due process, a plaintiff must show "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process. *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

A constitutionally protected property interest may exist in the expectation of continued employment when an employee has a "legitimate claim of

entitlement to it." *Kekai v. Hargrave*, 649 F.2d 748, 751 (9th Cir. 1981). Constitutionally protected property interests are created and defined by "existing rules and understandings that stem from an independent source such as state law." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971 (9th Cir. 1998) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

"The base requirement of the Due Process Clause is that a person deprived of a property interest be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Brewster*, 149 F.3d at 984. A public employee dismissible only for cause is entitled to "notice and an opportunity to respond." *Hibbs v. Dep't of Hum. Res.*, 273 F.3d 844, 873 (9th Cir. 2001) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). A "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*

In the FAC, Benthin alleges generally that he was terminated "from his position without adequate due process." (ECF No. 12 at ¶ 92). This conclusory allegation is insufficient to survive a motion to dismiss. Benthin does not allege that he had a constitutionally protected property interest in his position with WCSD, nor does he allege that he was a public employee dismissible only for cause or a tenured public employee. (ECF No. 12.) While Benthin does assert a deprivation resulting from the termination of his employment, he does not allege that the procedures by which he was terminated were constitutionally inadequate. (*Id.* at ¶ 92.)

Though Benthin's response to WCSD's motion to dismiss includes additional facts regarding this claim (ECF No. 27 at 16), Benthin has not amended his complaint to include such information. Benthin has therefore failed to state a claim for a violation of his procedural due process rights.

Benthin also attempts to plead facts supporting the policy element of a *Monell* claim under a ratification theory. (ECF No. 12 at 15–17.) The District

1   argues that this cause of action should be dismissed because Benthin's bare

2   assertions fail to sufficiently plead a *Monell* claim. (ECF No. 17 at 14–16.)

3       Under *Monell,* a government entity may not be held liable under 42 U.S.C.

4   § 1983, "unless a policy, practice, or custom of the entity can be shown to be a

5   moving force behind a violation of constitutional rights." *Id.* (citing *Monell*, 436

6   U.S. at 694). In particular, a municipal entity "may be liable under § 1983 for

7   constitutional injuries pursuant to (1) an official policy; (2) a pervasive policy or

8   custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a

9   final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–3

10  (9th Cir. 2019).

11      "A municipality may be held liable for a constitutional violation if a final

12  policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987

13  (9th Cir. 2004). To show ratification, plaintiff must show that "an official with

14  final policy-making authority 'delegated that authority to, or ratified the decision

15  of, a subordinate.'" *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

16      This claim appears to be based on an unnamed superintendent's "custom,

17  pattern, practice and/or procedure of transferring dangerous students to schools

18  without informing the administration, teachers, and/or staff at said school." (ECF

19  No. 12 at ¶ 103.) No superintendent has been named in this case and Benthin

20  does not identify any other official with final policy-making authority. Benthin

21  also does not identify the challenged decision made by a subordinate. The

22  complaint merely alleges the unnamed superintended would ratify "violent acts"

23  committed "against offending students, teachers, and/or staff" by "failing to

24  discipline the students," "allowing the student to remain in the same school," or

25  "transferring the student to [] another school within WCSD." (*Id.* at ¶ 104.)

26      These allegations are too vague and conclusory to adequately plead

27  ratification. Benthin's response to WCSD's motion to dismiss contains additional

28  factual information regarding this claim. (ECF No. 27 at 16–19). The Court

12

therefore finds that Benthin has failed to adequately allege *Monell* liability against WCSD based on a theory of ratification, but grants Benthin leave to amend his complaint.

Additionally, as stated above, Benthin has not presented sufficient evidence for the Court to find a violation of his rights under the Due Process Clause. In the absence of an underlying violation of the plaintiff's rights, *Monell* liability generally cannot be imposed. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Consequently, the Court dismisses all federal law claims without prejudice and grants Benthin leave to amend his complaint.

**D. State Law Claims**

The Court next addresses Benthin's state law claims against the District. As an initial matter, Benthin does not contest dismissal of his negligence claim. (ECF No. 27 at 19, n. 4.) The Court, accordingly, dismisses that claim.

The District also raises several global defenses to Benthin's state law claims. The District first argues that Benthin's FAC must be dismissed because all claims contained within the FAC are barred by Nevada's workers' compensation statutes. (ECF No. 17 at 8–10.) Benthin contends that Nevada workers' compensation statues do not apply to intentional torts. (ECF No. 27 at 20.)

Nevada workers' compensation statutes provide the exclusive remedy of an employee against his employer for accidental workplace injuries "arising out of and in the course of [] employment." *Conway v. Circus Circus Casinos, Inc.*, 8 P.3d 837, 839 (Nev. 2000) (citing NRS 616A.020(1)). However, employers do not enjoy immunity from liability for their intentional torts under the exclusive remedy provision of workers' compensation statutes. *Id.* at 840. Employees may avoid the exclusive remedy provision if they factually allege that the employer "deliberately and specifically intended to injure them." *Id.*

13

1    Here, Benthin alleges IIED, assault, and battery by WCSD. (ECF No. 12 at ¶
2    113–33.) These are intentional torts that Benthin claims that either the District
3    directly, or through N.L., carried out with the specific and deliberate intent to
4    harm him. (*Id.*) Thus, Benthin's intentional tort claims are not barred by Nevada's
5    workers' compensation statutes.

6        Benthin's three remaining state law claims require some manner of
7    vicarious liability on the part of the District. Under Nevada state law, an employer
8    can be vicariously responsible "only for the acts of his employees[,] not someone
9    else." *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1223 (Nev. 1996).
10   Respondeat superior liability, or vicarious liability, attaches when an employee is
11   "under the control of the employer and when the act is within the scope of
12   employment." *Molino v. Asher*, 618 P.2d 878, 879 (Nev. 1980). Thus, an actionable
13   claim "on a theory of respondeat superior requires proof that (1) the actor at issue
14   was an employee, and (2) the action complained of occurred within the scope of
15   the actor's employment." *Rockwell,* 925 P.2d at 1223. Under the doctrine of
16   respondeat superior, an "employer may be held liable for both negligent and
17   intentional acts of employees." *Burns v. Mayer*, 175 F.Supp.2d 1259, 1266 (D.
18   Nev. 2001).

19   Benthin's IIED claim does not name or refer to any actor, other than the
20   District itself, who engaged in the elements of IIED. (ECF No. 12 at 113–20.) In
21   contrast, Benthin's fifth and sixth claims allege that the District, by and through
22   N.L., assaulted and battered Benthin. (*Id.* at 121–33.) However, Benthin has cited
23   no case law or statutory provisions that establish that a school district may be
24   held liable for the tortious acts of a student.

25   In Benthin's response, he correctly notes that the District has not addressed
26   any theories of agency or vicarious liability related to Benthin's state law claims.
27   (ECF No. 27 at 22.) Instead, for each of Benthin's state law claims, the District
28   argues that it is a corporate entity that is incapable of forming the "requisite

mental state to commit an intentional tort." (ECF No. 17 at 16–19.) The District does not point to any authority supporting the proposition that Nevada school districts are corporate entities incapable of being liable tortious conduct. The Court therefore declines to dismiss Benthin's state law claims based on this line of reasoning.

### 1. Intentional Infliction of Emotional Distress

Benthin next asserts an intentional infliction of emotional distress (IIED) claim, alleging that Defendants "allow[ed] a knowingly dangerous student to transfer to the school and attack innocent students and Mr. Benthin" and then "insinuate[ed] that Mr. Benthin was somehow to blame for the attack." (ECF No. 12 at ¶ 114–15.) The District argues that this claim is insufficiently pled (ECF No. 17 at 16–17.)

To recover for IIED, a plaintiff must show (1) extreme and outrageous conduct by defendant; (2) defendant's intent to cause emotional distress or reckless disregard as to the probability of emotional distress; (3) plaintiff's severe emotional distress; (4) and actual and proximate causation between defendant's conduct and plaintiff's emotional distress. *Branda v. Sanford*, 637 P.2d 1223, 1227 (Nev. 1981); *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981). Extreme and outrageous conduct is that which is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized society." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation omitted).

Benthin's allegations in support of his claim of IIED are largely conclusory. Benthin does not identify any individual actor who "acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result." (ECF No. 12 at 113–20.) Through respondeat superior, the District may be liable for IIED committed by an employee, if the employee was under the control of the District, and the tortious act was committed within the scope of employment. *Molino*, 618 P.2 at 879.

While Benthin's response to WCSD's motion to dismiss contains additional factual allegations that would support this claim if properly pleaded (ECF No. 27 at 21–22), Benthin has not amended his complaint to include these allegations. The Court therefore dismisses Benthin's intentional infliction of emotional distress claim with leave to amend.

### 2. Assault and Battery

Benthin's fifth and sixth causes of action are for assault and battery. (ECF No. 12 at ¶ 123–126). The District argues that both claims should be dismissed because they are insufficiently pled. (ECF No. 17 at 18.)

To establish a claim for assault, a plaintiff must show that the defendant (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact. Restatement (Second) of Torts, § 21 (1965); *Burns*, 175 F. Supp. 2d at 1269.

Similarly, to establish a battery claim, a plaintiff must show that the defendant (1) intended to cause harmful or offensive contact, and (2) such contact did occur. Restatement (Second) of Torts, §§ 13, 18 (1965); *Burns*, 175 F. Supp. 2d at 1269.

Benthin alleges that WCSD was responsible for the assault and battery by N.L. because it "directed and ratified" the "malicious and intentional conduct by N.L." (ECF No. 12 at ¶ 122–24.) Such an allegation appears to be a vicarious liability argument. However, as stated above, Benthin has cited no case law or statutory provisions that establish that a school district may be held liable for the tortious acts of a student. Accordingly, the Court finds that Benthin has failed to adequately demonstrate that WCSD can be liable, by and through a student, for assault and battery, but grants Benthin leave to amend his complaint.

### E. Punitive Damages

Benthin seeks an award of punitive damages based on his federal and state law claims. (ECF No. 12.) The District argues that Benthin's request for punitive

16

1    damages is barred by statute. (ECF No. 17 at 23).

2    Punitive damages may not be awarded for section 1983 claims against

3    municipal entities, because such entities are unable to form the requisite intent,

4    and punitive damages would serve to punish taxpayers. *Lancaster Cmty. Hosp. v.*

5    *Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991); *City of Newport v.*

6    *Fact Concerts, Inc.*, 453 U.S. 247, 268–71 (1981).

7    Furthermore, pursuant to NRS 41.035, an award of damages in a tort action

8    against a political subdivision of the state of Nevada, like WCSD, may not include

9    an award of punitive damages. *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d

10   321, 336–37 (9th Cir. 1995) (citing NRS 41.035(1)).

11   Accordingly, WCSD's motion to dismiss will be granted as to Benthin's request

12   for punitive damages.

13   **III.    CONCLUSION**

14   It is therefore ordered that Defendant Washoe County School District's

15   Motion to Dismiss (ECF No. 17) is granted.

16   Plaintiff's claims one and seven are dismissed with prejudice.

17   Plaintiff's claims two, three, four, five, and six are dismissed without

18   prejudice and with leave to amend.

19

20   Dated this 19th day of September 2025.

21

22

23   _____

24   ANNE R. TRAUM
     UNITED STATES DISTRICT JUDGE

25

26

27

28

17