UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAMES BENTHIN, an individual,

Plaintiff,

v.

WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada; DOES I through XX; and ROE CORPORATIONS I through XX,

Defendants.

Case No. 3:24-cv-00428-ART-CSD

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Plaintiff James Benthin brings this case against Defendant Washoe County School District ("WCSD" or "the District"), alleging violations of state and federal law. Following a violent incident with a student in the Special Education classroom *alibertt* Desert Skies Middle School, Benthin was terminated from his position with WCSD. The Court previously dismissed Benthin's First Amended Complaint (ECF No. 17) with leave to amend. (ECF No. 45.) Benthin then filed a Second Amended Complaint. (ECF No. 47.)

Before the Court now is Defendant's Motion to Dismiss Benthin's Second Amended Complaint. (ECF No. 48.) As detailed below, the Court dismisses four of the six claims, leaving only Benthin's *Monell* claim and IIED claim.

## I. FACTS

The following allegations are adapted from Benthin's Second Amended Complaint, which provides a similar factual discussion as the First Amended Complaint (ECF No. 12 at 4-12). Benthin was employed by WCSD as a paraprofessional and worked within the Special Education Department at Desert Skies Middle School ("Desert Skies"). (ECF No. 47 at ¶ 30.) Shortly before the incident at issue, a minor student, N.L., transferred to Desert Skies from Turning Point, a self-contained program within WCSD for children with special needs. (*Id.*

at ¶¶ 32-33.) Students are placed at Turning Point based on having demonstrated significant behavioral regression in the least restrictive environment on a middle or high school campus. (*Id.* at ¶ 33.) Benthin and Mrs. Hood, a Special Education teacher at Desert Skies, received N.L.'s education file after N.L.'s transfer, which they felt indicated that N.L was a danger to students and staff. (*Id.* at ¶ 35.) Benthin alleges that WCSD, the Principal of Desert Skies, Ms. Quintana, and the Dean at Desert Skies, Ms. Phillips, also had access to the file documenting N.L.'s history of violent and disruptive behavior towards students and teachers prior to N.L.'s transfer to Desert Skies from Turning Point. (*Id.* at ¶¶ 33, 36.)

Benthin and Hood alerted Special Education Administrators Bryan Moll and Colleen Saiz to their concerns regarding N.L. (*Id.* at ¶¶ 37-38.) Benthin and Hood also requested a meeting to review the "Social Intervention" policies and procedures with N.L., but this meeting never occurred. (*Id.* at ¶ 40.) According to Benthin, WCSD administrators would not provide the necessary resources for the meeting and instead responded, "well you're stuck with him." (*Id.*)

On or around October 17, 2023, Benthin was working with a student, A. Doe, in a special education classroom at Desert Skies. (*Id.* at ¶ 41.) N.L. entered the classroom and taunted A. Doe by singing a Papa Roach song named "Last Resort," and "telling [A. Doe] to commit suicide." (*Id.* at ¶ 42.) After Benthin and Hood tried to correct N.L.'s behavior, N.L. screamed profanity and homophobic slurs and "threatened A. Doe with physical harm." (*Id.* at ¶¶ 43-44) Benthin "attempted to de-escalate N.L. several times," but those efforts were unsuccessful. (*Id.* at ¶¶ 46-47.) To protect A. Doe, Benthin told A. Doe to go into "a small storage room behind a closed door adjacent to the classroom." (*Id.* at ¶ 47.) N.L. then took A. Doe's backpack, walked over to the storage room door, and taunted and threatened A. Doe through the door. (*Id.* at ¶ 49.)

According to the Second Amended Complaint, after Benthin placed himself between N.L. and the storage room door, a "struggle occurred" in which Benthin

brought N.L to the floor and laid on top of him to restrain him. (*Id.* at ¶¶ 50-51.) N.L continued to try to harm Benthin. (*Id.* at ¶ 52.)

Hood called the front office, leading to the arrival of Dean Phillips. (*Id.* at ¶¶ 53-54.) Dean Phillips observed Benthin restraining N.L. and "demanded Benthin to release N.L. without having any security measures in place to assist and/or protect Benthin from N.L.'s violent behaviors." (*Id.* at ¶ 55.) Benthin claims that this response was the result of "adherence to WCSD's de facto or official policy against teacher self-defense or defesne of others, and WCSD's lack of any safety training for Phillips to compensate for" that policy. (*Id.*)

When Benthin complied with the instruction to release N.L., N.L. struck Benthin in the face with a backpack, resulting in a broken nose and severe concussion. (*Id.* at ¶¶ 56-58.) N.L then exited the classroom, followed by Phillips. (*Id.* at ¶¶ 57, 59.)

Approximately fifteen minutes later, N.L. broke and then climbed through the outside window of the classroom. (*Id.* at ¶ 59.) N.L. approached Benthin, uttered profanity and slurs at Benthin, and picked up a chair and threw it toward Benthin, hitting a desk and shattering Benthin's computer. (*Id.* at ¶¶ 60-61.) N.L. then ran off campus but was ultimately apprehended by school police officers. (*Id.* at ¶¶ 64-65.)

Soon after the incident, Principal Quintana asked Benthin to go to the front office to fill out a police report. (*Id.* at ¶ 66.) When he reached the office, he saw an unrestrained N.L. was also present without any security around. (*Id.* at ¶ 67.)

On October 18, 2023 (the day after the above incident), Benthin used sick leave to seek medical attention. (*Id.* at ¶ 69.) On October 20, 2023, he returned to his duties at school. (*Id.* at ¶ 70.) That same day, Principal Quintana asked Benthin to meet to discuss the incident and "things we could have done better." (*Id.* at ¶¶ 71-72.) According to Benthin, Principal Quintana disputed his version of events and then informed him that she planned on returning N.L. to Benthin's

classroom. (*Id.* at ¶¶ 73-74.) Benthin then "used several sick days to rest and recuperate" from his injuries. (*Id.* at ¶ 77.)

On October 23, 2023, Benthin visited the sheriff's department to file assault and battery charges against N.L., but he was told that school police had exclusive jurisdiction over the incident. (*Id.* at ¶ 75.) Benthin then filed a police report with Desert Skies' campus police. (*Id.* at ¶ 76.) He never heard back. (*Id.*)

Some time later, Benthin received a letter via certified mail from Principal Quintana, dated October 31, 2023. (*Id.* at ¶ 79.) The letter informed Benthin that "he had 'abandoned' his position, had not responded to wellness checks by the police department and her, and was absent without authorization for 3 consecutive workdays." (*Id.*) The letter also informed Benthin of WCSD's intent to fire him. (*Id.*) Benthin responded to Principal Quintana's letter, "notifying her that he was fearful for his life" because he was told that N.L. had returned to the Special Education classroom at Desert Skies. (*Id.* at ¶ 81.) Benthin also notified Principal Quintana that he wanted to retain his position, "requested a reasonable accommodation," and asked for N.L. to be removed from the classroom for the safety of him and others. (*Id.* at ¶ 82.) According to Benthin, he did not receive a response from Principal Quintana or WCSD, and was not informed of his right to contest the basis of the letter. (*Id.* at ¶ 83.) He was then terminated. (*Id.* at ¶ 84.)

In his Second Amended Complaint, Benthin alleges six causes of action: (1) violation of his Fourteenth Amendment procedural due process rights; (2) violation of his Fourteenth Amendment substantive due process rights under 42 U.S.C. § 1983; (3) *Monell*[1] liability under § 1983; (4) intentional infliction of emotional distress (IIED); (5) assault; and (6) battery. (*Id.* at 11-18.) He seeks general and special damages, injunctive relief reinstating Benthin with full back pay, declaratory relief, and reasonable attorney fees and costs. (*Id.* at 19.)

---

[1] *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).

The District filed a Motion to Dismiss the Second Amended Complaint (ECF No. 48), to which Benthin timely filed a response (ECF No. 51.) The District then filed a Motion to Strike the response on the grounds that it exceeded the page limit. (ECF No. 52.) The District simultaneously filed a Motion to Extend the deadline for filing their reply in support of their Motion to Dismiss. (ECF No. 53.) Benthin filed a response to the Motion to Strike, arguing that it would be disproportionate for the Court to strike the response for exceeding the page limit. (ECF No. 54.) The Court denied the Motion to Strike and instructed the District to file a reply notwithstanding the overlong response (ECF No. 57), which it did (ECF No. 58). The Court now reviews the District's Motion to Dismiss and responsive briefing.

## II. ANALYSIS

In its Motion to Dismiss, the District argues that each of Benthin's claims must be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim. (ECF No. 48 at 3.) A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require "detailed factual allegations," it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To sufficiently allege a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In reviewing a motion to dismiss, a court will accept the factual allegations in the complaint as true. *Id.* However, "bare assertions" of fact are not entitled to an assumption of truth. *Id.* at 680–81 (quoting *Twombly*, 550 U.S. at 555). Instead, such allegations are discounted if

"they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* If a court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

The Court begins by addressing several threshold issues the District raises in the motion to dismiss. It then turns to the merits of the claims.

**A. Incorporation by Reference**

As in its previous motion to dismiss (ECF No. 17 at 6 n.3), the District argues that surveillance videos that captured parts of the incident should be incorporated by reference because they depict part of the incident that serves as the basis of Benthin's complaint (ECF Nos. 48 at 5 n.3, 58 at 2). The District also argues that incorporation is appropriate because the videos are included as an exhibit in the District's police report from the incident, which Benthin references making in his FAC. (*Id.*) The Court again finds both arguments unavailing.

A district court, generally, "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, a court may "consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* (citing *Branch,* 14 F.3d at 453–54). The "mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010).

Here, though the surveillance videos may support a defense to Benthin's allegations, they do not "form the basis of the complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018). The surveillance videos are also not of the type of document that is normally incorporated by reference. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998) (finding incorporation by reference appropriate when a plaintiff's claim about insurance coverage was based on the contents of a coverage plan), *as amended* (July 28, 1998). The Court thus declines to incorporate the surveillance videos by reference.

**B. Judicial Notice**

The District relatedly argues that the Court should take judicial notice of the surveillance videos "because the District has requested it" and has supplied the Court with the "necessary documents, which are capable of accurate and ready determination." (ECF No. 48 at 5 n.3.) The District also asks the Court to take judicial notice of the Washoe Education Support Professionals (WESP) Collective Bargaining Agreement ("CBA") because Benthin alleges in his complaint that the District's actions violated the CBA and thus acknowledges that it governs here. (*Id.* at 6 n.4.)

A court "may only take judicial notice of adjudicative facts that are 'not subject to reasonable dispute.'" *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (quoting Fed. R. Evid. 201(b)). A fact is indisputable, and thus subject to judicial notice, only if it is "either 'generally known' under Rule 201(b)(1) or 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned' under Rule 201(b)(2)." *Id.* at 909. While a court may take judicial notice of matters of public record, a court "cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999. As such, "accuracy is only part of the inquiry under Rule 201(b). A court must also consider—and identify—which fact or facts it is noticing." *Id.*

The District does not simply request that the Court take judicial notice of

the fact that the surveillance videos exist. Instead, it requests that the Court take judicial notice of the contents of the videos to prove that Benthin "initiated physical confrontation" with N.L. (ECF No. 48 at 4-5.) This fact, among others that the District allege the surveillance videos show, is disputed by Benthin (ECF No. 51 at 12-14) and is thus far beyond the usual purposes of judicial notice.

Regarding the CBA, Benthin seemingly acknowledges the relevance of the CBA by claiming once in his complaint that the District acted "in direct violation of the Collective Bargaining Agreement." (ECF No. 47 at 11.) Again, the District does not simply request that the Court take judicial notice of the existence of an operative CBA; rather, it seeks to show that a specific CBA imposed administrative remedies that Benthin failed to exhaust. (ECF No. 58 at 6, n.4.) Although the District provides a website link to a repository of CBAs governing the various Nevada public school districts, including the WESP CBA it asks the Court to presume governs here (*id.*), it has not provided any documentation or reference to show that Benthin is in fact a signatory to this CBA. *See Estevez v. Hedgpeth*, No. CV–07–1553–ROS (PC), 2012 WL 174637, at *7 (E.D. Cal. Jan. 20, 2012) ("The party requesting judicial notice bears the burden of persuading the court judicial notice is proper.").

The Court therefore declines to consider both the surveillance videos and the CBA[2] at this stage.

**C. Workers' Compensation Scheme**

The District next argues that five of Benthin's six claims—all but the Fourteenth Amendment substantive due process claim—are barred by Nevada's workers' compensation scheme. (ECF Nos. 48 at 8-11, 58 at 3-4.) Benthin responds that the workers' compensation laws bar neither § 1983 nor intentional

[2] The District argues that dismissal is appropriate because Benthin "failed to exhaust administrative remedies through his CBA." (ECF No. 48 at 16.) Because the Court declines to judicially notice the CBA, the Court will not address the exhaustion argument.

tort claims and are thus inapplicable here. (ECF No. 51 at 19-22.)

Nevada workers' compensation statutes provide the exclusive remedy of an employee against an employer for accidental workplace injuries "arising out of and in the course of [] employment." *Conway v. Circus Circus Casinos, Inc.*, 8 P.3d 837, 839 (Nev. 2000) (citing NRS 616A.020(1)). Two exceptions to the exclusive remedy are relevant here. First, this scheme "does not preclude recovery for claims involving 'substantive rather than procedural constitutional rights.'" *Jensen v. City of Oxnard*, 145 F.3d 1078, 1084 n.3 (9th Cir. 1998) (quoting *Smith v. Fontana*, 818 F.2d 1411, 1415 (9th Cir. 1987)); *Maynard v. City of San Jose*, 37 F.3d 1396, 1405 (9th Cir. 1994) (stating that constitutional claims implicate fundamental public policy concerns and are not preempted by workers' compensation). Nor do employers "enjoy immunity, under the exclusive remedy provisions of the workers' compensation statutes, from liability for their intentional torts." *Conway*, 8 P.3d at 840. While "[s]imply labeling an employer's conduct as intentional . . . will not subject the employer to liability," employees may avoid the exclusive remedy provision if they factually allege that the employer "deliberately and specifically intended to injure them." *Id.*

The District's invocation of the exclusive remedy provision under Nevada's workers' compensation scheme fails. Benthin's first claim is unrelated to workers' compensation: it challenges the District's termination decision, irrespective of the alleged workplace injuries that give rise to the remaining claims. (ECF No. 47 at 11-12.) Benthin's third claim alleges that a District policy results in substantive constitutional violations (*id.* at 14-16) and is thus not barred. *Jensen*, 145 F.3d at 1084 n.3. Finally, Benthin's state law claims allege that the District committed three intentional torts "by and through Phillips" and/or N.L., effectively arguing that the District is vicariously liable for the intentional torts of its employee and agent. (ECF Nos. 47 at 16-18, 51 at 19-20.) While the merits of that theory are discussed below, as a threshold matter Nevada's workers' compensation law does

not shield employers from being held vicariously liable for the intentional torts of their agents. *See Burns v. Mayer*, 175 F. Supp. 2d 1259, 1266-67 (D. Nev. 2001). This is not an instance where the plaintiff seeks to hold their employer liable solely based on their failure to act, *see e.g., Conway*, 8 P.3d at 840-41; rather, Benthin alleges that the District, through an agent, took intentional and deliberate action to cause him tortious harm. (ECF No. 47 at 16-18.) The Court thus concludes that the claims as pleaded fall outside the workers' compensation scheme.

**D. Governmental Immunity**

The District next argues that NRS 41.032 affords it discretionary function immunity from Benthin's claims, all of which it characterizes as targeting decisions by the District or its employees that are inherently within its discretion. (ECF Nos. 48 at 11-12, 58 at 4-5.) This argument, too, fails.

NRS 41.031(1) "waives the immunity from liability and action of all political subdivisions of" Nevada, subject to certain exceptions. The purpose of this waiver "is 'to compensate victims of government negligence in circumstances like those in which victims of private negligence would be compensated.'" *Martinez v. Maruszczak*, 168 P.3d 720, 730 (Nev. 2007) (quoting *Harrigan v. City of Reno*, 475 P.2d 94, 95 (Nev. 1970)). Generally, the State's waiver of sovereign immunity "is to be broadly applied." *Id.* at 730. One exception, however, is established in NRS 41.032(2), which "provides complete immunity from claims based on a state employee's exercise or performance of a discretionary function or duty." *Martinez*, 168 P.3d at 726. "To fall within the scope of discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.* at 729 (adopting the test governing analogous immunity under the Federal Tort Claims Act). But "[c]laims that fall 'facially outside the discretionary function exception' will survive a motion to dismiss, and the burden will shift to the government to

prove how the discretionary function exception applies." *Lafua v. L.V. Metro. Police Dep't*, No. 2:22-cv-02133-GMN-BNW, 2024 WL 5294976, at *3 (D. Nev. Mar. 29, 2004) (quoting *Prescott v. United States*, 973 F.2d 696, 702 n.4 (9th Cir. 1992)).

"[A]cts that violate the Constitution cannot be viewed as discretionary." *Cloes v. City of Mesquite*, 582 F. App'x 721, 727 (9th Cir. 2014); *see also Nurse v. United States*, 226 F.3d 996, 1002 & n.2 (9th Cir. 2000) ("In general, governmental conduct cannot be discretionary if it violates a legal mandate. . . . [T]he Constitution can limit the discretion of federal officials such that the [] discretionary function exception will not apply."). Furthermore, "if a complaint alleges that the 'policy-making defendants promulgated discriminatory[ or] unconstitutional policies which they had no discretion to create,' it may not be covered by the exception." *Lafua*, 2024 WL 5294976, at *3 (quoting *Nurse*, 226 F.3d at 1002). The District argues that Benthin's constitutional claims simply recast his personal grievances with the District's discretionary policy choices (ECF No. 48 at 12), but it provides no authority bringing alleged violations of the Fourteenth Amendment within the ambit of the discretionary function exception. The Court thus rejects the immunity argument as to Benthin's first three claims.

Similarly, "NRS 41.032 does not protect a government employee for intentional torts or bad-faith misconduct." *Franchise Tax Bd. of Cal. v. Hyatt*, 335 P.3d 125, 139 (Nev. 2014), *vacated and remanded on other grounds*, 578 U.S. 171 (2016); *see also Ribar v. Washoe Cnty.*, No. 3:24-cv-00526-ART-CSD, 2025 WL 3754290, at *10 (D. Nev. Dec. 29, 2025) (applying *Hyatt* to reject the argument that the county was immune from intentional tort claims). The District characterizes Benthin's state tort claims as dressed-up negligence claims subject to discretionary function immunity (ECF No. 48 at 12), but as discussed above, the Court takes at face value, at this stage, Benthin's theory that the District is vicariously liable for the intentional torts of its employees and agents.

In sum, the Court concludes that Benthin's claims, as pleaded, fall facially

outside the discretionary function exception.

**E. Federal Law Claims**

Turning to the merits of Benthin's claims, the Second Amended Complaint alleges three federal causes of action against the District. (ECF No. 17 at 11-16.) First, Benthin claims that his termination violated his procedural due process rights under the Fourteenth Amendment. (*Id.* at 11-12.) Second, he claims that the District, through Phillips, was deliberately indifferent to the danger posed by N.L., violating his substantive due process rights under the Fourteenth Amendment. (ECF No. 47 at 12-14.) Relatedly, Benthin's third claim is that the District has a policy of deliberate indifference to the risk of such attacks on teachers, exhibited by its failure to provide sufficient security and safety training and its policy prohibiting the use of reasonable force in self-defense and defense of others. (*Id.* at 15.) This claim also alleges that his termination without due process was carried out pursuant to the decisions of District policymakers. (*Id.*)

As a threshold matter, the District asserts that Benthin's federal claims are improperly pleaded. First, it argues that Benthin's first claim necessarily fails because he brought it directly under the Fourteenth Amendment, which does not provide a private right of action. (ECF No. 48 at 14-15.) Second, the District argues that these claims are duplicative because municipal governments can only be sued for constitutional violations under *Monell*, which Benthin references only in his third claim. (*Id.* at 13.)

The District is correct that "[t]he Fourteenth Amendment itself does not create a private right of action; instead, [plaintiffs] must pursue [their] alleged constitutional claim[s] under" § 1983." *Hale v. Long*, No. 3:21-cv-01252-AC, 2021 WL 4165388, at *2 (D. Or. Sept. 13, 2021); *Magana v. Commonwealth of the N. Mariana Islands*, 107 F.3d 1436, 1441-42 (9th Cir. 1997) (explaining that the Supreme Court has "made clear the necessity for § 1983 as the statutory vehicle for bringing claims under the Fourteenth Amendment"). Furthermore, under

*Monell*, "[a] government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). Benthin thus should have brought each of his constitutional claims as a single *Monell* claim alleging multiple theories of liability. *See Brizuela v. City of Sparks*, No. 3:19-cv-00692-MMD-WGC, 2021 WL 4150936, at *6 (D. Nev. Sept. 13, 2021) (concluding that a plaintiff "may assert a single claim for municipal liability under § 1983 that alleges all the theories of liability the [plaintiff] wishes to pursue").

"Defendants cannot prevail on this basis alone," however. *Barrett v. Johnson*, No. 1:23-CV-3028-TOR, 2024 WL 1998508, at *5 (E.D. Wash. May 6, 2024) (treating an improperly pleaded Fourteenth Amendment claim as if it were properly brought under § 1983). "Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of a legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (reversing the dismissal of a direct Fourteenth Amendment claim based on failure to invoke § 1983); C. Wright & A. Miller, 5 Fed. Prac. & Proc. Civ. § 1215, 172 (4th ed.) (interpreting Federal Rule of Civil Procedure 8(a)(2) "as indicative of a basic objective of the rules to avoid civil cases turning on technicalities"). The Court thus treats Benthin's claims as properly pleaded under § 1983 and as asserting alternative theories of municipal liability under *Monell*.

To establish a *Monell* claim, "a plaintiff must prove '(1) that [they] possessed a constitutional right of which [they were] deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty*, 654 F.3d at 900 (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). The predicate for *Monell* liability may be "(1) an official policy; (2) a pervasive practice or custom;

(3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). While a municipality cannot be sued under § 1983 on a vicarious liability theory, *id.* at 603, it may be held liable "if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). To show ratification, the plaintiff must show that "an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

With this understanding, the Court proceeds to evaluate each claim.

**1. Fourteenth Amendment Procedural Due Process Claim**

Benthin's first claim is, in essence, that he was unconstitutionally terminated without due process. (ECF No. 47 at 11-12.) Specifically, he claims that he had a constitutionally protected property interest in his employment and was thus entitled to—yet denied—notice and an opportunity to be heard before his termination. (*Id.*) On the merits, the District responds that Benthin has failed to state a valid *Monell* claim and has not identified a pertinent policy, custom, or practice giving rise to liability. (ECF Nos. 48 at 15, 58 at 5-6.)

To make out a procedural due process violation, a plaintiff must show "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). As to the first element, constitutionally protected property interests are created and defined by "existing rules and understandings that stem from an independent source such as state law." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971 (9th Cir. 1998) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "A government employee has a constitutionally protected property interest in continued employment [only] when the employee has a legitimate claim of entitlement to the job," not merely an unvested expectation of it. *Portman*, 995

F.2d at 904. "[A] constitutionally protectible entitlement may arise from contractual language providing for discharge from employment only for 'cause,' or even from the mere fact that a contract provides for continued employment during a fixed term." *San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cnty.*, 825 F.2d 1404, 1408 (9th Cir. 1987) (citation omitted). A public employee dismissible only for cause is entitled to "notice and an opportunity to respond." *Hibbs v. Dep't of Hum. Res.*, 273 F.3d 844, 873 (9th Cir. 2001) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). On the other hand, "[i]f under state law, employment is at-will, then the claimant has no property interest in the job." *Id.* at 873.

"Employees in Nevada are presumed to be employed 'at-will' unless the employee can prove facts legally sufficient to show a contrary agreement was in effect." *Dillard Dep't Stores v. Beckwith*, 989 P.2d 882, 884-85 (Nev. 1999). Other courts have concluded that employment contracts and CBAs may confer entitlements that merit due process protections, overcoming that presumption. *See, e.g., San Bernardino*, 825 F.2d at 1407-09 (employment contracts); *Am. Fed'n of Gov. Emps., AFL-CIO v. Noem*, 785 F. Supp. 3d 833, 860-61 (W.D. Wash. 2025) (finding that plaintiffs demonstrated a likelihood of success on the merits in alleging that rights provided in a CBA were deprived without due process); *cf. Leff v. Clark Cnty. Sch. Dist.*, No. 2:15-cv-01155-RFB-GWF, 2018 WL 4705520, at *4 (D. Nev. Sept. 30, 2018) ("[B]ecause a teacher's post-probationary status was conditioned on individualized determinations [under state law], the District was required to provide notice and an opportunity to respond.").

In the Second Amended Complaint, Benthin states that he was employed "as a paraprofessional in the Special Education Department" at Desert Skies and that he "had a constitutionally protected property interest in his employment." (ECF No. 47 at 6, 11.) He further asserts that he was terminated by the District "without notice and/or the opportunity to be heard, in direction violation of the

Collective Bargaining Agreement." (*Id.* at 11.) Given the pleading that he worked continuously for the District from 2014 until his termination in 2023 (*id.* at 3), it is plausible that he had some legitimate claim of entitlement to the procedures afforded under the CBA. He further alleges that his termination was effectuated by Quintana as authorized by the District, or alternatively ratified by the District. (*Id.* at 15.) The Court concludes that these allegations are sufficient to state a *Monell* claim for violation of Benthin's procedural due process rights, surviving the motion to dismiss.

**2. Fourteenth Amendment Deliberate Indifference Claim**

Benthin's second claim is that the District, through Phillips, was deliberately indifferent to the known and obvious risk of danger posed by N.L., violating Benthin's substantive due process right to bodily integrity under the Fourteenth Amendment. (ECF No. 47 at 12-14.) Relatedly, Benthin's third claim is that the District has a policy of deliberate indifference to the known and obvious risk of such attacks on teachers, exhibited by its failure to provide sufficient security and safety training and its policy of banning teachers from using reasonable force in defense of themselves and others. (*Id.* at 15.) The District first responds that these claims are duplicative. (ECF No. 48 at 13.) On the merits, it argues that Benthin's allegations merely indicate his disagreement with its policies, fail to meet the high bar imposed by the deliberate indifference standard, and fail to allege the elements of a *Monell* claim. (*Id.* at 13-14, 19-20.)

The Court agrees with the District that Benthin's second and third claims are duplicative. The second claim focuses on the actions of Phillips, who is not named as a defendant. (ECF No. 47 at 12-14.) To the extent that the District is mentioned within this claim, it is to allege that Phillips acted pursuant to a "de facto or official policy" of the District. (*Id.* at 13.) That is effectively a *Monell* claim—just like the deliberate indifference allegations in Benthin's third cause of action. *Monell,* 436 U.S. at 694 ("A local government may not be sued under §

1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.”). The Court thus construes Benthin’s second and third claims as one single theory of *Monell* liability.

To that end, Benthin challenges two related policies. First, he alleges that the District has a de facto or official policy prohibiting teachers from using reasonable measures to defend themselves and others from dangerous students. (ECF No. 47 at 13-15.) Second, he alleges that the District fails to train its employees in security and safety measures for handling such students. (*Id.*) He further alleges that the District ratified Phillips’s deliberate indifference to the known and obvious risk posed by N.L., as a manifestation of the aforementioned policies. (*Id.*) Benthin asserts that these policies deprived him of his constitutional “right to be free from state-imposed violations of bodily integrity.” (ECF No. 47 at 12). Specifically, he claims that the District had access to N.L.’s student file and thus knew that N.L. posed a risk of danger to the students and teachers of Desert Skies when he was transferred. (*Id.* at 6-7.) Moreover, those risks became particularly clear to Phillips when, according to the Second Amended Complaint, N.L. began threatening A. Doe with physical violence, leading to the struggle between him and Benthin. (*Id.* at 7-8.) Yet Phillips told Benthin to release N.L. when it was foreseeable that doing so could lead to N.L. harming Benthin. (*Id.* at 8-9, 13.) Benthin alleges that this amounted to unconstitutional deliberate indifference. (*Id.* at 14.) *See Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (stating the elements of a deliberate indifference claim: (1) a municipal actor’s affirmative act created an “actual, particularized danger,” (2) the resulting injury was foreseeable, and (3) the actor was “deliberately indifferent to the known danger”). Ultimately, he claims that Phillips’s actions, and the harm he suffered therefrom, flowed from the District’s policy of “preventing teachers from using reasonable self-defense and defense of others combined with [the] utter failure to

train Phillips in safety and security measures needed to compensate for situations where [the District] precludes teachers from defending themselves and others." (ECF No. 47 at 14-15.)

The District responds that these allegations fail to sufficiently plead a *Monell* claim. (ECF Nos. 48 at 12-14, 58 at 8-10.) For one, it argues that a single incident cannot prove the existence of a policy under *Monell.* (*Id.* at 13.) But Benthin also points to statistics of increased arrests within District schools in the time leading up to the October 17, 2023, incident with N.L. as evidence that the District was on notice of the negative effects of the alleged policies. (ECF No. 47 at 5.) The District also cites two cases as authority for its argument that Benthin's allegations are insufficient (ECF No. 48 at 13-14), but both of those cases address the summary judgment stage and are thus inapposite. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021); *Palagonia v. Sachem Cent. Sch. Dist.*, No. CV 08–0791(ETB), 2012 WL 1391917, at *10 (E.D.N.Y. Feb. 14, 2012). The District also contests Benthin's factual account. (ECF No. 48 at 19.) Fact-based arguments are unpersuasive at the motion to dismiss stage, where the plaintiff's facts are generally accepted as true. *See, e.g.*, *Iqbal*, 556 U.S. at 678.

In sum, the Court concludes that Benthin has alleged a *Monell* claim sufficient to withstand a motion to dismiss. *See Brizuela*, 2021 WL 4150936, at *6 (permitting one *Monell* claim that asserts multiple theories of liability). Within that claim, he presents two theories of liability: (1) that the District terminated him in violation of his Fourteenth Amendment procedural due process rights; (2) that the District is deliberately indifferent to the known and obvious risk of danger to its teachers and students, demonstrated through (a) its policy of prohibiting reasonable defensive force, and (b) its failure to train its subordinates in security and safety measures required to respond to that risk.

**F. State Law Claims**

Finally, the Court addresses Benthin's three state law claims against the

District, for IIED, assault, and battery. (ECF No. 47 at 16-18.)

Each requires some manner of vicarious liability on the part of the District. Under Nevada state law, an employer can be vicariously responsible "only for the acts of his employees[,] not someone else." *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1179 (Nev. 1996). Vicarious liability, or respondeat superior liability, attaches when an employee is "under the control of the employer and when the act is within the scope of employment." *Molino v. Asher*, 618 P.2d 878, 879 (Nev. 1980). Thus, an actionable claim "on a theory of respondeat superior requires proof that (1) the actor at issue was an employee, and (2) the action complained of occurred within the scope of the actor's employment." *Rockwell*, 925 P.2d at 1179. Under this doctrine, an "employer may be held liable for both negligent and intentional acts of employees." *Burns*, 175 F. Supp. 2d at 1266.

Benthin's IIED claim asserts that Phillips is the responsible actor and that the District and Phillips had a principal-agent relationship, such that the District should be held vicariously liable for Phillips's actions. (ECF No. 47 at 16-17.) In contrast, Benthin's fifth and sixth claims assert a more tenuous chain of command, alleging that the District is vicariously liable for the actions of Phillips, who in turn took control of N.L. to assault and batter Benthin. (*Id.* at 17-18.) The responsible tortfeasor for the assault and battery claims, then, is N.L. But Benthin cites no authority to establish that a school district may be held liable for the tortious acts of a student, or that an employer can be liable for the tortious acts of a non-employee. In fact, the opposite is true. *See Rockwell*, 925 P.2d at 1179. The Court thus dismisses the assault and battery claims, leaving only the IIED claim based on the relationship between the District and Phillips.

To recover for IIED, a plaintiff must show (1) that the defendant engaged in extreme and outrageous conduct; (2) that the defendant intended to cause the plaintiff emotional distress, or acted with reckless disregard as to that probability; (3) that the plaintiff suffered severe emotional distress; (4) and actual and

proximate causation. *Branda v. Sanford*, 637 P.2d 1223, 1227 (Nev. 1981). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized society." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citation omitted).

Benthin alleges that the Phillips's conduct was extreme and outrageous because she "left Benthin in a helpless position and open to attack by N.L. . . . even though N.L. was straining to continue his attack on [Benthin]." (ECF No. 47 at 16.) He alleges that she did so with at least a reckless disregard for the probability that Benthin would suffer severe emotional distress from having to encounter an unrestrained N.L., and lists the manifestations of that distress, including chronic headaches and post-traumatic stress disorder. (*Id.* at 16-17.) The District argues that this claim consists solely of legal conclusions without facts sufficient to state a valid claim. (ECF Nos. 48 at 22, 58 at 11-12.)

The Court concludes that Benthin's claim survives the motion to dismiss. First, the allegedly tortious act was committed by Phillips, a District employee, and within the scope of her employment, thereby satisfying the requirements for vicarious liability. *Molino*, 618 P.2d at 879. The remaining questions—such as whether Phillips's conduct was "extreme and outrageous," whether she acted with reckless disregard for the possibility that Benthin would suffer emotional distress, and whether Benthin suffered severe emotional distress—are factual, not to be resolved at the motion to dismiss stage. *Shoen v. Amerco, Inc.*, 896 P.2d 469, 477 (Nev. 1995) (describing these as factual issues precluding summary judgment, let alone dismissal). The Court therefore rejects the District's request to dismiss Benthin's IIED claim.

## III. CONCLUSION

It is therefore ordered that Defendant's Motion to Dismiss (ECF No. 48) is GRANTED IN PART and DENIED IN PART.

The motion is granted with respect to Benthin's first, second, fifth, and

sixth claims, which claims are DISMISSED WITHOUT LEAVE TO AMEND, as amendment would be futile. The motion is denied with respect to Benthin's third claim—alleging *Monell* liability on numerous theories, as discussed above—and fourth claim.

It is further order that Defendant's Motion to Extend the deadline to file a reply in support of the Motion to Dismiss (ECF No. 53) is DENIED AS MOOT.

Dated this 28th day of September 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE